UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:04-cv-1717-JDT-TAB |
| ) | |
| INTERNATIONAL TRUCK and ENGINE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 40)**[1]

Plaintiff James Smith alleges that Defendant International Truck and Engine Corporation terminated his employment because of his race in violation of 42 U.S.C. § 1981. Defendant denies this claim. Before the court is the Defendant's Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The time for filing a response has passed, and the Plaintiff has not responded to the motion (or sought an enlargement of time within which to respond) despite the fact that proper notice was sent to him. So the motion is ripe for summary ruling pursuant to Local Rule 7.1(a). It seems that the Plaintiff did not respond because he had nothing to offer to rebut Defendant's factual assertions.

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

**I.    Material Facts**

These facts are taken from the Defendant's summary judgment submission. The Plaintiff's failure to respond to that submission, in combination with the effect of Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1(e) of this court, allows the court to take these facts as stated by the Defendant and supported by admissible evidence to be admitted to exist without controversy.

Defendant International Truck and Engine Corporation ("International") operates an engine manufacturing plant (the "plant") in Indianapolis. Approximately 1,300 individuals were employed there during the relevant time period, 1,000 of whom (including Plaintiff James Smith) were represented by United Auto Workers, Local No. 98. At all times relevant, International had in effect at the plant a Sexual Harassment Policy (the "policy") which strictly prohibits "all forms of sexual harassment" including conduct that creates a hostile, intimidating, or offensive working environment. The policy is available on the company intranet, posted on bulletin boards throughout the plant, and re-distributed periodically to all employees, thus including Mr. Smith. The plant also has in effect a separate "Harassment Policy" which prohibits other forms of unlawful harassment. The policy prohibits conduct and language that constitutes unlawful sexual harassment as defined by the courts under local, state and federal anti-discrimination laws. The policy also prohibits "all inappropriate behavior having sexual conduct" and includes a partial listing of prohibited conduct, including (among other things):

> • Unwanted sexual advances;
>
> • Making sexual gestures;
>
> • Verbal conduct, such as making or using derogatory comments, epithets, slurs, sexually explicit jokes, comments about an employee's body or dress;
>
> • Verbal sexual advances or propositions; and
>
> • Physical conduct, such as touching or assault.

(Thatcher Aff. ¶ 21 & Ex. A 1-2.)  The policy explains that International will investigate and, as soon as practicable, make a determination regarding the alleged harassment. The policy also informs employees that if International determines that prohibited harassment has occurred, it will take appropriate disciplinary action dependent upon the circumstances, up to and including discharge.  Furthermore, all bargaining unit employees, including Mr. Smith, periodically are required to attend anti-harassment training.

In 2002, three female employees ("complainants") approached International's Senior HR Generalist Nancy Hachman to discuss concerns they had about inappropriate sexual conduct or comments in the plant allegedly committed by certain male coworkers (not including Mr. Smith).  International promptly investigated their allegations with the assistance of its Indianapolis counsel, attorneys from Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (the "investigators").

On May 8, 2002, Mr. Smith was interviewed about his knowledge of sexual harassment at the plant.

During the course of the investigation, and shortly before Mr. Smith's scheduled interview, a Caucasian female coworker Barbara Cheesman complained to Ms. Hachman that Cheesman had been subjected to inappropriate sexual conduct. Ms. Cheesman did not provide the name of the alleged harasser to Ms. Hachman.

Ms. Cheesman was interviewed shortly after Mr. Smith's interview on May 8, 2002. She told the investigators that she had been subjected to sexual conduct by a male coworker with whom she had worked directly since September 2001. She reported that this employee:

- had pulled up his gym shorts and intentionally exposed his penis to her;
- had patted her crotch five or six times;
- had repeatedly slapped her on her buttocks while exclaiming, "That's a tight butt, tight booty";
- had grabbed and squeezed her breast while she was bent over a trash can; and
- had repeatedly asked her for sex (using words such as "get down" and/or "do the wild thing," among other phrases).

She also reported that this conduct made her extremely uncomfortable, to the point that she dreaded coming to work. Ms. Cheesman added that she consistently refused the coworker's requests for sex, oftentimes appealing to the fact that they were both married in hopes that it would stop.

Ms. Cheesman told the investigators that she was aware that International's harassment policy includes multiple avenues for reporting harassment, but she chose not to report the misconduct because she felt reluctant to "tell on" a fellow "Union

brother." The investigators advised Ms. Cheesman of International's commitment to ensuring a workplace free of inappropriate harassment and requested that she disclose the name of the employee so that management could take the proper steps to ensure that such conduct did not continue. She refused. She did, however, provide certain information which allowed the harasser to be identified: (a) he had been assigned to perform "fill in" work in Ms. Cheesman's area for another employee whom had been out on leave, since September 2001; (b) he had just worked with Ms. Cheesman the prior day; (c) he was African-American; and (d) he wore gym shorts to work.

Following Ms. Cheesman's interview, and in order to identify the alleged harasser, the investigators compared Ms. Cheesman's interview responses against their other interview notes and International's records. Based on their analysis they identified Mr. Smith as the possible harasser. During his May 8, interview, Mr. Smith was wearing the type of gym shorts that Ms. Cheesman described having witnessed the male coworker wear on the day he allegedly exposed his penis to her. Mr. Smith's work record confirmed that he had commenced working in Ms. Cheesman's area around September 2001 and had worked with her directly the day before her interview. And several other interviewees reported that they had heard rumors that Mr. Smith had exposed himself to a female coworker. At least one interviewee recalled overhearing Cheesman complain to coworkers that a male coworker had shown her his penis.

On August 15, 2002, the investigators met again with Mr. Smith. They presented him with Ms. Cheesman's allegations. Mr. Smith admitted that he had patted Ms. Cheesman on the butt, but blamed it on the close quarters of their work area. He also

5

admitted that they had engaged in sexual conversations.  Mr. Smith denied the remainder of the allegations.  He complained that Ms. Cheesman had herself engaged in inappropriate sexual conduct, including that she had pulled down his shorts and underwear (exposing his genitals) while he had both hands filled with pistons.  He claimed to have heard that other co-workers had experienced similar "pants pulldowns" by Ms. Cheesman.  Following Mr. Smith's interview, the interviewers conducted several additional interviews to fully investigate the complaints against Ms. Cheesman.  Mr. Smith's report was corroborated by other co-workers who also said they had had their pants pulled down by Ms. Cheesman.  One co-worker reported that on at least one occasion in the lunchroom, Ms. Cheesman intentionally flashed her breasts at her coworkers.

Ms. Cheesman was interviewed a second time to allow her to respond to the allegations of inappropriate sexual conduct against her.  She acknowledged the "breast flashing" incident, but claimed that it was unintentional and happened while she was attempting to correct a "backwards" shirt.  She denied the pants-pulling incident, but admitted that on at least one occasion she had threatened an employee with "snap-up your gym pants" that "someone should pull your pants down" or "someone is going to pull your pants down."

Based on a review of all of the evidence and the demeanor and credibility of the witnesses, the investigators concluded that both Mr. Smith and Ms. Cheesman had violated the harassment policy.  They recommended that termination was the appropriate discipline for the violations committed by these employees according to

International's harassment policy. On November 18, 2002, the investigators issued a report outlining the steps of the investigations and including their factual findings. On January 2, 2003, they issued a letter containing their legal analysis and recommendations for action to be taken regarding violators of International's sexual harassment policy. According to the report and letter, Mr. Smith and Ms. Cheesman had violated the Company's harassment policy and their conduct warranted termination. Based on the report and recommendations of the investigators, C. Jeffrey Thatcher, International's Labor Relations Resource Leader, terminated both Mr. Smith and Ms. Cheesman in January of 2003. At the time of Smith's termination, Thatcher placed in Smith's file a memorandum stating Smith was terminated for violation of International's sexual harassment policy.

## II.   Conclusions of Law

The federal summary judgment standard requires no discussion as it has been fully analyzed, especially since the Supreme Court directed clarity in the understanding of this concept in 1986. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The absence of opposition to the Defendant's factual presentation essentially dooms the Plaintiff's suit. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Plaintiff has no direct evidence of race discrimination, so he must proceed under the familiar burden-shifting analysis established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). Under that analysis, Plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802; *Ballance*, 424 F.3d at 617. To establish a prima face case, a plaintiff must offer evidence that: he is a member of a protected class; he was meeting his employer's legitimate performance expectations; he suffered an adverse employment action; and he was treated less favorably than similarly situated individuals not in his protected class. *Ballance*, 424 F.3d at 617. Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* If it does so, then the burden reverts to the plaintiff to show that the proffered reason is a pretext for discrimination, in other words, that the stated reason was not the true reason for the action taken. *Id.*

Mr. Smith cannot demonstrate a prima facie case of race discrimination because he has offered no evidence to show that he was meeting International's expectations or that a similarly situated non-African American individual was treated better than he. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001) (concluding that the plaintiff was not meeting his employer's legitimate expectations where he violated the employer's attendance rules and doctored its records to hide his violations). It is undisputed on the record before the court that Mr. Smith violated International's policy prohibiting sexual harassment. In addition, while Mr. Smith alleges that a white male

employee who routinely violated the sexual harassment policy was not treated as harshly as he (Compl. ¶ 12), Smith cannot rest on this mere allegation in his pleading; instead, he is required to produce evidence to support his claim.  *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001) ("The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence.").[2]  He has not done so.  Mr. Smith cannot raise a triable issue of fact as to his prima facie case of race discrimination and, therefore, International is entitled to summary judgment in this case.

Even if Mr. Smith could demonstrate a prima facie case of race discrimination, his claim would not survive summary judgment.  International has offered a legitimate, nondiscriminatory reason for terminating his employment — Smith's violation of its sexual harassment policy.  Smith has offered nothing to suggest that this reason is phony.  Thus, summary judgment would be appropriate.

---

[2] The record supports a finding that a Caucasian employee who also violated International's sexual harassment policy — Cheesman — also was terminated.

**III.     Conclusion**

For the reasons stated above, the Defendant's Motion for Summary Judgment (Document No. 40) will be **granted** and a separate judgment will be entered.

ALL OF WHICH IS ENTERED this 2nd day of October 2006.

　　　　　　　　　　　　　　　　　　　　　John Daniel Tinder, Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court

Copies to:

John M. Broderick
Pugh Jones Johnson & Quandt
jbroderick@pjjq.com

Linzey D. Jones
Pugh Jones Johnson & Quandt
ljones@pjjq.com

James Smith
4407 Eastbourne Drive
Indianapolis, IN 46226